Sorry, Shabad Lubavitch of Litchfield versus Litchfield Historic District. Good morning, your honors. My name is Jim Stodronsky. I am the attorney for the borough of Litchfield with me is attorney Scott Schwefel. Scott is going to, would like to address the cross appeal in this case as well as handle the rebuttal. And I would like to ask the court's permission if he could have five minutes instead of the three minutes because he is addressing also the cross appeal. And rebuttal? And rebuttal. Well, we'll stick with three and usually we run over anyway. Thank you, your honors. This is, the principle issue in our appeal is that the questioning the prevailing status of the plaintiffs. We're asking this court to find that the parties of plaintiffs did not prevail in this case and that the only reasonable attorney's fees would be no attorney's fees. It's clear that in all of the law on this case that the right to attorney's fees under 1988 has to be directly connected to the benefit that the plaintiff receives. And that that benefit has to come from actions that the court made the defendant to take. Your argument is they received no benefit? My argument is they did. They received no benefits. Well, after the decision, the decision said they should file a plan and that it must be approved. That's correct. Right? Yes. They didn't have that power before, did they? They did not. So in the discussions after, don't you think they had sort of the whip hand because they had that judgment in their pocket? Well, the question is whether that order of the court was of any benefit to the plaintiffs. That's what I'm asking you. Don't you think that when the plaintiffs, the plaintiffs came to the defendants after the judgment and there were discussions about what should be done, right? You don't think the plaintiffs had the whip hand in that discussion? Because they said, and if you don't do what we want, we can always go back and force you to approve our plan. I don't think so. You would like to have that piece of paper in your pocket when you were bargaining? Your Honor, that never happened. I understand. They didn't have to use it. Apparently the discussions were amicable, or at least there's no indication they weren't. But don't you think that was a powerful thing to have in their pocket, which they got from the court? I don't think it was of any power, if I can explain. No power at all? If I can explain. Okay, go ahead. Eight days after the decision, Your Honor, they went back to the court. And they went back to the court and said, we don't want this plan. We want a different set of plans. Will you please amend your decision to allow a whole different set of plans? Isn't the law clear that whether you're prevailing has nothing to do with what happens afterwards? The question is, what were your rights at the moment the judgment was entered? The question is, at the time the judgment was entered. That's right. Now, it doesn't say at the moment or the instant the judgment was entered. I would suggest that time means a reasonable period of time within the time period that the judgment was entered. For instance, I would certainly think that it would include that eight days that they came back. And they asked the court to please amend it. That when they say whether you're prevailing depends on the time of the judgment, the court's mean, and a reasonable time thereafter? That is certainly for this court to decide. I would suggest that it does not. There's no case that says that. I don't think the cases are clear that it's at the actual instant. But that's certainly within your realm to decide whether you believe that it has to be at the instant. I suggest- If the test is, maybe not the second, but by the time the judgment is duly recorded and sent to the plaintiff, and the plaintiff reads it and says, oh, I've got a piece of paper that says when I go to this defendant, I've got a piece of paper that's going to give me some power. Even if this court holds that, as you say, the instant or within a day or whether it's filed, I would say that it is of absolutely no benefit to the plaintiff in any instance, whether with respect to negotiating or anything. They didn't want it. The plaintiff went back almost immediately in eight days and asked the court to change it. We're not interested in that building. We didn't get our damages. We wanted millions of dollars of damages. That was thrown out. We wanted to have a residence, and that was thrown out. And we don't want this building, Judge. You think it's a good building, but we don't want this building. And the judge said no to that. And what did the plaintiffs do after that? They absented themselves from the litigation. There's nothing in this record. Think of it. They were told that they had to build that building. All they had to do was put in and file for a certificate of appropriateness. That's all they had to do. They refused to do that. I didn't even find an affidavit before this court that says, oh, yeah, we did benefit. We benefited. If you look at it this way or you look at it this direction, we got a little benefit. The plaintiffs had no benefit to this. Plaintiffs got a ruling that the defendants had violated the plaintiffs' rights, right, and that the defendants had substantially burdened their religious exercise. They did. I mean, isn't that something significant? It's very clear that a judicial pronouncement, a declaratory judgment, is not sufficient to make a prevailing party. For there to be a prevailing party and for our . . . Didn't the court's judgment create a legal obligation on the part of the defendants? At that point and instance, no. It was an . . . Don't . . . I'm sorry. Excuse me, Your Honor. Didn't the judgment create a legal obligation on the part of the defendants to approve an application if one was consistent with the parameters set forth in the judgment? The answer is yes, but it was an in co-ed obligation. At the instant the judgment was offered, there was absolutely no obligation for the defendant to do anything. It was in co-ed. He wasn't legally obligated. And that's why I say that in this instance, the benefit and the action of the plaintiff or the defendant, which are both deeply intertwined here . . . The plaintiffs are prevailing. I believe that she used the wrong standard on prevailing. Our standard. Is it abuse of discretion? Yes. Is it whether she abused her discretion? I think it's a question of law, plenary law. She used the wrong standard. The standard is that there has to be a benefit to the plaintiff caused by an action by the defendant, and there were neither in this. She just simply said . . . Whether there's a benefit. She presided over this case for years. She presided over the trial. Do we give her any deference on whether the plaintiffs derived any benefit from this? I think if you look at her decision, she just simply used the wrong standard. She used a standard that simply said if there's some kind of change in the legal . . . Whether there was a benefit. Is she entitled to any deference? She didn't find any benefit. Okay. She didn't find a single benefit. Mr. Schwefel has reserved some time. All right. Thank you, Your Honors. May it please the Court in good morning. My name is Daniel Dalton. I represent Chabad-Lubovitch in this appeal. Twelve years ago, an application was filed with the Litchfield Historic District for a Certificate of Appropriateness. After about six months of hearings, the Historic District denied that application. We went to ten years of litigation. Nine written opinions. One time up here to the Second Circuit and once to the Supreme Court. None of the underlying issues at trial have been appealed. It's only the issue of attorney fees that we're here about today. And the Court has put the finger right on the head of the issue of the prevailing party status, where the Supreme Court said in Farrar and Hensley, at the time of judgment, there needs to be a benefit. So what happened in the record at the time of judgment? The Court found that the Chabad went from being substantially burdened to being substantially free . . . I'm sorry, substantially burdened as a result of the Certificate of Denial . . . to being substantially free as a result of the prosecution of this case to trial and a judgment. The Court went through in a . . . What is the benefit that the plaintiffs have gained through this judgment? The ability to file for the Michael Bowe plan to have the Chabad. And the record is, in this case . . . I'm surprised you . . . Well, they got that. They got that, but they also . . . That's all they got. Are you . . . Oh, no, not at all. Not at all. Yeah. So it was the ability to worship in Litchfield. It was the ability to get that Certificate of Appropriateness. The ability to move forward on their plans to have a house of worship in a community that rejected them 12 years ago. And so, what they received is a substantial benefit at that particular time with Judge Hall's opinion. And I think what's important to note is that . . . What the Supreme Court said in Farrar v. Hobby and in Hensley, again, was at the time of judgment. If there's a change at that specific time, then the plaintiff is a prevailing party. It's also important to note, at trial, there was just one claim that went to trial, and that was for injunctive relief. That's all we asked for at trial. So, you . . . The plaintiffs won a benefit. Did they actually make use of it? Yes. And the argument is, they didn't submit an application. Therefore, they didn't really take advantage of this ruling. And therefore, there is no tangible benefit. Right. So, what happened is, afterwards, the rabbi decided that he would like the Garrick Plan, which was the plan that was submitted by the town at trial to say, this is really what we would like . . . this is what we would approve. And his idea was, if I go with the Garrick Plan, it'll be a lot easier to get through everything moving forward. So, on Day 30, what was submitted to the township was the Garrick Plan with the signature from the rabbi saying, this is what we want. The Bowe Plan was never modified pursuant to the instructions of Judge Hall. But thereafter, there was a communication and an amicable resolution between the parties where the Garrick Plan, a modified version of the Garrick Plan, was actually approved by the Historic District. And the process went after that. That couldn't have occurred without the trial. Sure. Did the ruling in the litigation have any impact on the final resolution and the acceptance of a modified plan? Absolutely. Because they couldn't have gone forward and received any benefit without the ruling at trial. Not even the Garrick Plan, which is what I'm . . . Right. Because the Garrick Plan . . . So, what happened was, we went through trial and the court said, come back in 30 days and do your closing arguments, which we did. And at that time, Mr. Shipman, who tried the case, said that he, on behalf of his clients, they would accept the Garrick Plan, which was the first time in nine years that they had ever said that you could even be here. But this is after all the proofs are in and the whole nine yards. The court didn't rely on that when it made its decision. The court didn't even mention it in its 73-page opinion about the substantial burden that had occurred to the Chabad as a result of the denial of their certificate of appropriateness. The court just looked at the proofs in the case and said, at the end of the day, you substantially burdened the Chabad through that denial. So, the benefit clearly was to the Chabad, to the plaintiff, that once the court found a substantial burden, then they were able to move forward with getting their house of worship renovated. Are you going to discuss entitlement to fees for the administrative proceeding? Sure, Your Honor. So, the basic argument is this. There's the case that we cited in our brief that pre-hearing work in the planning commission in the land use context, you're entitled to fees. What I'd like to point out that was not argued in the brief is the reason why. Williamson County, the decision that the Supreme Court made a couple years ago in Takings Claim, said that in the context of land use, you have to go and you have to exhaust your administrative remedies. And you have to avail yourself to anything below hand and get a final decision before you go to federal court. In the context of land use, it's the only civil right where you have to go back to the police, I'm sorry, go back to the municipality after your rights have been violated. After they already told you we're going to deny you to go through the process and get denied before you can go forward. The other thing is that this record in this trial, and this trial was based solely on, well not solely, but a majority of the record was based on the evidence that was introduced to the historic district when it was making its decision on the certificate of appropriateness. Is the record of the administrative proceeding in our record? I guess the first question is, is there a record of the administrative proceeding? There is a record of the administrative proceeding. Do we have it? I believe so, I'd have to ask Scott if you don't. The HDC's decision was included in this? It was included in the appendix, yes. The record of the administrative proceeding? Your Honor, I'd have to double check the appendix and send the court a letter. I don't recall off the top of my head. I believe it was, but I don't recall off the top of my head if it was. Was it presented before the district court in the application for the fees relative to the, or related to the conducting of the administrative proceeding? Yes, the record was, because it was submitted to the court for trial, so everything was submitted to the district court. Were those recorded hearings? I've done some land use law back many years ago, but were those actually recorded so there is a transcript or at least an oral recording of them? Yes, Your Honor, there was a transcript and there was also a video recording, both of which were played at trial, because we cross-examined witnesses that said one thing at the historic district and another thing at trial, so I do recall that. Coming back then, yes. Well, the court's decision was that no right had been violated until the end of the administrative proceedings. Is that a sufficient reason for not giving fees in the administrative proceeding? I don't believe so. And just from a practical standpoint of doing land use work, when you go into a planning commission or historic district or whatever, the very first thing you do is have a meeting with the planner or the village or whatever and say, this is what we'd like to do, and the answer primarily is, well, that's fine, go ahead and present your plan, or sometimes it's no. If it's no, you still have to proceed and go through the whole process. My understanding in this case is, again, I didn't handle it from the beginning, but from what Mr. Merriam and Mr. Herbst advised me, who did handle this, is they originally went in, it was no, but they still had to go through that whole process. That's not in the record, though, I don't believe. The only remaining defendant is the historic district, is that correct? That is correct, Your Honor. And the borough. Oh, and the borough. I'm sorry. Oh, the borough of Litchfield is still a defendant? Yes, that's correct, Your Honor. The town of Litchfield was dismissed. There are two separate municipalities, the borough and its commission, the HBC, are both defendants. And the borough is a governmental unit. Correct. Does it have taxing power? Yes. But the nonprofit does not. It does, because they collect, the historic district does collect funds for that area. Maybe Mr. Stodrosky can explain that. The historic district commission would be the same as the zoning commission for a town. It's a commission of the borough. So you have the borough and its commission. Okay. But I'm trying to understand, because there is some law that a nonprofit defendant is entitled to consideration in the reduction of a fee. So I'm trying to understand the economic status of both defendants here. But the borough, you tell me, is a governmental unit. So they're no different than the town as far as liability for fees, because they can tax. That's correct. And the historic district would be like a police department of a city or a zoning board, a fire department or a zoning board of a city. Right. It's part of the city, but a different, you know, it's a separate entity basically. It's not in . . . That's the borough. The borough. What about the historic district? The historic district is part of the borough. I guess ultimately my question is going to be is, can they in any way distribute this loss by use of the taxing power? Yes. They can't? The borough can. No. Yeah. How about the historic district? I don't believe so. I believe the historic district itself is not a taxing entity. That's what I would have thought. But I'm not . . . They're dependent on the largesse of the community. I believe that's . . . Like any non-profit. No, Your Honor. No, that's not true. Like a zoning commission. Right. They receive all of their money from the borough. Yeah, so the borough allocates funds to run the historic district. Let's put it this way. If the fee award stands against the historic district, how do they pay it? Out of what? Well, they had insurance for a while, but I'm not sure that exists anymore.  Because they're a division of the borough. They're a division of the borough. No different than the police department is a division of the borough. Correct. Accurate, both of you. And the borough has assets. The borough has buildings and parks and things like that. Excuse me. No, it doesn't. The borough owns nothing. The borough doesn't even have a full-time employee. The borough does not have assets. Real estate. I was informed it was, but apparently it's not. Okay. Any other questions, Your Honors? No? And then we'll hear from Mr. Schweffel. Your Honor, I just would like to address a rebuttal for a minute, and then I'll turn it over to Attorney Schweffel. The question came up, the issue came up, about what happened after this when they went back to the HDC for a second plan. The first set of plans that they wanted were for a building that was 20,200 square feet in size. The plans that they submitted were by an entirely different architect, by Garrick, for plans under 9,000 square foot. Footprint went from 5,000 square feet down to 3,000 square feet. What difference does it make? The difference made is that it was granted and it had nothing to do with Ralupa. The rabbi was asked in that commission, does this building of 9,000 square feet meet your religious needs? And he said yes. At that point, they didn't even look at the floor plans of the building. At this point in time, he went in and he came in with a plan that was historically appropriate, and therefore he can put in there religious uses, he can put in residential uses, he can put in commercial uses, anything he wants. And this is something that could have been done 30 days after 2010. And as a matter of fact, the original decision of the borough invited him to come back with smaller plans that would be appropriate. And he ended up after this litigation, no damages, no residence, and he came back and he did what could have been done without this litigation with attorneys that had nothing to do with the litigation, Your Honor. With respect to the borough, just to clarify, the borough is a municipal entity. It's a tiny municipal entity. $700,000 is a multiple of their annual budget. They do not have a full-time employee. They do not own real estate. It's a small entity that basically administers the National Historic District of Litchfield. But that fiscally is a portion of the borough. And that is correct, Judge Hall. Yes, that's right. It is. Anything to add, Mr. Schwebel? Good morning to the police courts. Scott Schwebel on behalf of the Litchfield Historic District Commission. One thing that I want to add, people have been discussing this matter as if it's a use proceeding. It absolutely is not. Nothing to do with use has anything to do with the administrative proceeding nor the litigation. It was never any question that the Habbad would have the ability to exercise its religion as far as the town is concerned. It just had to relate to the size of the building and the expansion of the exterior of the building. Another thing that I wanted to address was Your Honor's query with regards to the benefit. And I would point out that if there was a benefit, Your Honor, it was a nominal benefit. And I say that because throughout the administrative proceeding and throughout the litigation, the Habbad had claimed and insisted that if we don't get the full 20,000 square feet, which includes a residence, the practice, the exercise of our religion will be substantially burdened. Judge Hall, the lower court, said no. They got less than that. They got half of that. And Judge Hall, the lower court, ruled that no. The exercise of your religion is not substantially burdened without a resident, without the 20,000 square foot structure. I'm sorry? Got half a loaf. Sure. Well put. Better than nothing, isn't it? Sure. But still, according to the Habbad, it wasn't good enough because they couldn't. A lot of litigants don't get all they want. There's nothing special about that. But again, circling around to what I was saying, as far as what the Habbad wanted, as far as the benefit to the Habbad, it was a nominal or pyrrhic victory. Who's going to pay this amount, whatever it is? Who's going to pay? First, is it fair to say it hasn't been paid yet? That's correct. And neither have the legal – the lawyers haven't been paid either, right? That's correct. That's the typical case of one of these litigation over these cases. Okay. So whether the amount is the existing amount or more with the administrative or less, who is going to pay? I don't know that I can answer that right now. Who's going to pay? The only option, as Mr. Stravosky eloquently pointed out, the borough owns no real estate. It's just a taxing entity. It's going to have to be passed through to the residents of the borough. I don't want to be held to this, but as far as I know right now, I think that is the only avenue for paying. There's no insurance? No, sir. There's no E&O insurance for the people who made the decision in the first instance? I'm sorry, Your Honor. Could you repeat that? There's no E&O insurance for the people who made the decision in the first instance? What's that? Mr. Stravosky is correct. It would not cover the attorney's fees. It's when the legal claims were stricken and when injunctive relief was all that was sought, that thereby excluded coverage. Okay. Is the borough going to look to the historic district for at least contribution? Well, the borough is the historic district. They're one and the same. Their boundaries are co-determined. The borough is the historic district. It's the same way that a planning and zoning board or commission or zoning board of appeals would be part of a town or a city. It's not a separate entity. It's just a municipal board. Thank you. If there are any other questions? Well, let me put it this way. Sure. If some good citizen of Litchfield is very interested in historic preservation and they send $100 to the historic district, is that tax-deductible as a charitable contribution? I believe so, Your Honor. So then they're a nonprofit. Okay. The borough is a municipality. The borough is a municipality. No, not the borough. The historic district. Yes. You get a tax deduction if you contribute to it. Is that right? The district is the same as the zoning district. And the jurisdiction over that district is the borough and the historic district. I'm just trying to understand. I believe that's the case. This would be a case of new impression, someone donating money to a municipal board. So you don't get a tax deduction? I don't believe so. They're not a 501c3 charitable organization. A municipal board is the best way that I could describe it, Your Honor. Okay. But they lack taxing power. Is that it? It's just the borough of Litchfield that taxes. Yes. They have a budget and that's part of it. I believe that's correct, Your Honor. Okay. I think that's it, gentlemen. Thank you. Thank you. Thank you both. Thank you, all three of you, four of you, for your argument. We'll reserve decision in this case.